## IN THE MATTER OF THE ESTATE OF NELLIE SPITZ, DECEASED.

### No. 1144.

#### APPEAL FROM CIRCUIT JUDGE, FIFTH CIRCUIT. HON. L. A. DICKEY, JUDGE.

ARGUED JANUARY 27, 1919.                    DECIDED FEBRUARY 6, 1919.

COKE, C. J., EDINGS, J., AND CIRCUIT JUDGE ASHFORD IN PLACE OF KEMP, J., ABSENT.

EXECUTOR AND ADMINISTRATOR—*distribution.*

An administrator is not authorized to distribute an estate except in conformity with the order of distribution unless he acts under clear and specific instructions of an heir at law with full and complete knowledge of her rights and her distributive share in the estate.

SAME—*same*—*contempt*.

> Contempt proceedings lie against an administrator to compel him
> to distribute an estate in conformity with the order of distribution
> made on his petition for discharge.

### OPINION OF THE COURT BY EDINGS, J.

This is an appeal by Mary Ann Fountain, an heir at law
of Nellie Spitz, deceased, from an order and judgment of
the circuit judge of the fifth circuit court of this Territory.
The facts of the case as disclosed by the record transmitted
to this court may be summarized as follows: That the said
deceased, Nellie Spitz, died intestate leaving property in
this Territory and leaving her surviving a widower, C. W.
Spitz, and a sister, Mary Ann Fountain, the petitioner-
appellant herein; that the said C. W. Spitz, the widower
of said deceased, was by the circuit court of the fifth cir-
cuit, and the judge thereof at chambers in probate, on the
30th day of November, 1915, duly appointed administra-
tor of the estate of the said Nellie Spitz, deceased, and
that he duly qualified as such administrator and assumed
the duties of said office; that on the 23d day of October,
1916, the said administrator filed in said court his petition
for the allowance of his accounts, the termination of his
trust and the distribution of said estate and upon the same
day filed in said court his final account as such adminis-
trator charging himself with $1975 and asking to be
allowed the sum of $54.50, leaving a balance in his hands
as such administrator of $1921.50; that upon the 25th day
of November, 1916, said court approved said accounts and
adjudged that the persons entitled to said estate were Mary
Ann Fountain and C. W. Spitz and that "each of said
above heirs shall be entitled to one-half of the property
now remaining in the hands of said administrator," and
that said administrator deliver over to said person the
property remaining in his hands "and do file with this
court proper receipts therefor" and that "this order so

far as discharge and cancellation of bond are concerned take effect from the date of the filing of said receipts;" that upon the 14th day of March, 1918, the said Mary Ann Fountain filed in the circuit court of the fifth circuit her petition, reciting her relationship to the deceased and the appointment of the said C. W. Spitz as administrator of said estate and the amount of money received by him as such administrator, and alleging that by virtue of the laws of this Territory petitioner is entitled to one-half of the property of said deceased, and that said "C. W. Spitz, although demand has been made on him for the same, after it became due * * * has wholly and completely failed, refused and neglected to pay to this petitioner one-half of the said amount of $1975, or any other sum of money with the exception of $200, which was paid to your petitioner on or about the second day of December, 1915;" that the said C. W. Spitz never at any time informed or advised petitioner that she was entitled to one-half of said estate but led petitioner to think that he was making a personal gift of said $200 from her sister's estate; that petitioner was ignorant of said estate and all proceedings had thereupon and prays that said C. W. Spitz be cited to show cause why he should not be adjudged guilty of contempt of court in refusing to obey the order of the court directing him to pay one-half of the estate in his hands to petitioner. Whereupon on said 14th day of March, 1918, an order to show cause was issued out of said circuit court, directed to said C. W. Spitz, administrator, requiring him to appear before said court and show cause why he should not be punished for contempt for having neglected and failed to carry out the order of the court. Thereafter the said C. W. Spitz filed his return to said order to show cause, stating that he was duly appointed administrator of the estate of Nellie Spitz on or about November 30, 1915; "that he has paid unto the petitioner her share in full out

of the said estate as her receipt on file herein will show, which is made a part hereof," which receipt is as follows: "$965.75    Received from C. W. Spitz, Administrator Estate Nellie Spitz this 2nd day of December, 1916, my one-half portion of the property of the above deceased. Mrs. Maryan Fountain."

Upon a hearing had upon the 2d day of May, 1918, the court found from the evidence adduced, in substance, that the administrator received the sum of $1975 and paid out $54.50 leaving a balance of $1921.50; that the final order of distribution directed that one-half of this sum be paid to petitioner; that the deceased left no will, "but a little while before her death talked with Mrs. Fountain and others about her wishes, and a week before she died gave a detailed statement to her foster daughter, Emma Armitage (child of Mrs. Fountain), which was written down by Mrs. Armitage. A few days after the death of Mrs. Spitz the relatives talked this over together and they all agreed that the wishes of 'Mrs. Spitz as to her property should be carried out." "These wishes were, as reported by Mrs. Armitage to the family, that Mr. Spitz should have $1500., Mrs. Emma Armitage $1000., Mrs. Rachel Cockett (daughter of Mrs. Fountain) $200., and Mrs. Fountain $200." "No one told Mrs. Fountain that by law she was entitled to half the money left by her sister." "After Mr. Spitz was appointed administrator he paid to Mrs. Fountain, Mrs. Armitage and Mrs. Cockett the sums as directed by Mrs. Spitz and agreed at the family conclave." "In his final accounts however he did not report this." "He told Mrs. Fountain that he needed her receipt to get his discharge and that it included money paid to Mrs. Armitage and Mrs. Cockett. Mrs. Fountain testifies that she signed it thinking it was a receipt for $200." "And I find as fact that she did know this" and "I find that Mrs. Fountain directed the administrator to pay all of her distributive

share except $200 to her daughters Emma and Rachel to carry out the request of the decedent; that Mr. Spitz made these payments as directed and that in signing the receipt Mrs. Fountain, with full knowledge of what had been done ratified this and is bound by her receipt," and "I find the respondent not guilty of contempt," from which order an appeal was duly perfected to this court.

Upon the hearing Mrs. Fountain, the petitioner, testified that she only received from the administrator two hundred dollars in a check, as her share of her sister's estate; that she signed the receipt (above set forth) supposing that it was for two hundred dollars; that she did not know anything about the amount of money in the estate; that "three months after her sister's death, in the early part of December, he (Mr. Spitz) called me over to his house, he passed the check and he said 'this is what Nellie left you' and the check was taken up by my husband to be changed at the bank;" that prior to the payment of this two hundred dollars she did not have any talk about it. The witness was then shown a list which was subsequently introduced and marked defendant's exhibit No. 2, but as this list was not included in the record transmitted to this court we are unable to determine its contents. "I thought it was the two hundred dollars that I was signing, I didn't see the other figures." "Mr. Spitz said you better sign that." "Three months after I received the two hundred dollars Mr. Spitz came to me with the receipt to sign." The testimony of Mr. Kaeo, a witness for the respondent, is: That he wrote the receipt for Mr. Spitz; that he asked Mr. Spitz "what was the portion coming to Mrs. Fountain, he told me he didn't know;" that witness looked up the record and put the figures $965.75 on the left hand corner of the receipt. Mrs. Armitage, a witness for respondent testifies: "I talked to my mother (Mrs. Fountain) about the list after the funeral at my house. My mother, my father, Mr. Spitz and my-

self were present. My mother said 'carry out the wishes of my dead sister.' " "We talked about the one thousand dollars to me in the sanatorium." Mr. Spitz testifies: "Mrs. Fountain said: 'Charley carry out my dead sister's wishes, everything will be all right.' Everything was satisfactory and everything was with the approval of Mrs. Fountain." "I followed the instructions shown by the memorandum." "I gave Mrs. Fountain $200 on the 11th December 1915," and "I said at that time the two hundred dollars to you, one thousand is going to Emma out of that money according to the request of my wife which we agreed upon at Manoa." "She didn't say anything. I couldn't make out anything what she said but that she agreed." "I gave her (Mrs. Fountain) two hundred dollars, to Rachel Cockett two hundred dollars and the balance $960 to Mrs. Armitage." "After I was appointed administrator I drew the money out of the estate and made those payments." "I did not think it was necessary to make any accounting to the court of what I had done with the estate if 'Mrs. Fountain tells me to carry out my wife's wishes.' "

We are forced to the conclusion that the evidence in this case does not warrant or support the decision arrived at by the circuit judge. It was the duty of the administrator to have complied with the order of distribution. Voluntary payments to distributees without an order or decree of court authorizing the same are made by the representative at his own peril. 18 Cyc. 631. The heir, Mrs. Fountain, was entitled to know fully and clearly the exact amount the administrator had in his hands for distribution. This amount was concealed from her by the administrator for at the time of the payment to her of the $200 he alone knew the amount of money in the estate, he not even having filed in the court any account or other statement which would indicate it. For the purpose of making distribution an administrator is unquestionably a trustee for the heirs. Fidelity is always required of executors

and administrators in the performance of their duties and the utmost good faith is exacted of them in all their transactions in regard to the estate.

The entire transaction and the acts of the administrator in this case were unauthorized and illegal and to the prejudice of the heir and we feel constrained to and do hereby set aside the order of the circuit judge purging the administrator of contempt and we remand the case to the circuit court with instructions to require the said C. W. Spitz, administrator, to be adjudged guilty of contempt unless he forthwith pay unto Mary Ann Fountain, the petitioner, the sum of seven hundred sixty and 75/100 dollars ($760.75) with interest thereon at six per cent, from the 25th day of November, 1916.

*C. S. Davis* (*G. A. Davis* and *Fred Patterson* with him on the brief) for petitioner.

*E. K. Aiu* (*A. G. Kaulukou* on the brief) for respondent.